**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 24-cv-20116-WILLIAMS/GOODMAN**

ALAN JEFFREY GOLDSTEIN,

      Plaintiff,

v.

FORTADOR, LLC,

      Defendant.

_____/

**REPORT AND RECOMMENDATIONS ON PLAINTIFF'S**
**<u>MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT</u>**

In this copyright infringement action, Alan Jeffrey Goldstein ("Plaintiff") filed a motion for final default judgment against Fortador LLC ("Defendant"). [ECF No. 13]. Defendant did not file a response to Plaintiff's motion and the response deadline has now expired.

United States District Judge Kathleen M. Williams referred this motion to the Undersigned pursuant to "28 U.S.C. § 636 and the Magistrate Rules of the Local Rules for the Southern District of Florida" for a report and recommendations. [ECF No. 14]. As explained below, the Undersigned **respectfully recommends** that Judge Williams **grant in part** and **deny in part** Plaintiff's motion**.**

## I.        Background

Plaintiff filed a single-count Complaint alleging that Defendant violated the Copyright Act, 17 U.S.C. § 106, *et seq.*, when it used his photograph without his permission. [ECF No. 1]. Plaintiff states that Defendant used his work "in order to advertise, market and promote its business activities." *Id.* at ¶ 4.

Plaintiff is an architectural photographer. *Id.* at ¶ 2. Defendant is a Florida "professional steam cleaner machinery company." *Id.* at ¶ 3. Plaintiff states that he "never gave Defendant permission or authority to copy, distribute or display the Work at issue in this case." *Id.* at ¶ 22.

Plaintiff obtained a Clerk's Default [ECF No. 9] against Defendant and now seeks the entry of a default judgment against it. [ECF No. 13]. In addition to seeking a default judgment, Plaintiff requests damages, costs, attorney's fees, prejudgment interest, and the entry of a permanent injunction against Defendant. *Id.*

## II.      Applicable Legal Standard

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." A party may then apply to the District Court for a default final judgment. Fed. R. Civ. P. 55(b)(2); *Alfa Corp. v. Alfa Mortg. Inc.*, 560 F. Supp. 2d 1166, 1173 (M.D. Ala. 2008).

A court may not enter a default final judgment based solely on the existence of a clerk's default. *Id.* at 1174. Instead, a court is required to examine the allegations to see if they are well-pleaded and present a sufficient basis to support a default judgment on the causes of action. *Id.* (citing *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[1] Only those factual allegations that are well-pleaded are admitted in a default judgment. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

The decision whether to enter a default judgment "is committed to the discretion of the district court." *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1576 (11th Cir. 1985). Default judgments are "generally disfavored" because this Circuit has a "strong policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015). In addition to assessing whether the complaint adequately sets forth facts to support the plaintiff's claims, a court considering the entry of a valid default judgment must "have subject-matter jurisdiction over the claims and have personal jurisdiction over the defendant." *Osborn v. Whites & Assocs. Inc.*, No. 1:20-cv-02528, 2021 WL 3493164, at *2 (N.D. Ga. May 20, 2021) (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 & n.13 (11th Cir. 2009)).

---

[1]   In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), our appellate court held that all Fifth Circuit decisions issued before September 30, 1981 would become binding precedent in the Eleventh Circuit.

A court may conduct a hearing on a motion for default judgment when, in order "to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." Fed. R. Civ. P. 55(b)(2); s*ee also Tara Prods., Inc. v. Hollywood Gadgets, Inc.,* 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that Rule 55(b)(2) "leaves the decision to hold an evidentiary hearing to the court's discretion").

### III.    Analysis

"[B]efore entering a default judgment, the Court must ensure that it has jurisdiction over the claims and there must be a sufficient basis in the pleadings for the judgment entered." *Tissone v. Osco Food Servs., LLC,* No. 19-CV-61358, 2021 WL 1529915, at *2 (S.D. Fla. Feb. 10, 2021), *report and recommendation adopted,* No. 19-61358-CIV, 2021 WL 870526 (S.D. Fla. Mar. 9, 2021) (citing *Nishimatsu,* 515 F.2d at 1206).

#### a.    Subject-Matter Jurisdiction

The Complaint [ECF No. 1] alleges a single cause of action -- the Copyright Act, 17 U.S.C. § 101, *et seq.* It states that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). *Id.* at ¶ 6.

The Undersigned agrees and finds that the Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a). *See Daka Rsch., Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 22-CV-60246, 2023 WL 5310240, at *2

(S.D. Fla. July 14, 2023), *report and recommendation adopted sub nom. Daka Rsch. Inc. v. Individuals, P'ships, & Unincorporated Ass'ns Identified on Amended Schedule "A"*, No. 22-60246-CV, 2023 WL 5289258 (S.D. Fla. Aug. 17, 2023) ("[T]he Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (providing for federal question jurisdiction) and 1338 (governing actions involving patents, copyrights, and trademarks, among others).").

### b.    Personal Jurisdiction

In addition to having subject-matter jurisdiction, a court must also have personal jurisdiction over each defendant. "A judgment rendered in the absence of personal jurisdiction is void and without legal effect." *Strange v. Nescio*, No. 20-80947-CV, 2021 WL 8945480, at *1 (S.D. Fla. Mar. 29, 2021) (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)). For this reason, "when deciding a motion for default judgment, a court has an affirmative duty to evaluate whether it has personal jurisdiction over the defendant and may raise the issue *sua sponte*." *Id.*

"The concept of personal jurisdiction comprises two distinct components: amenability to jurisdiction and service of process. Amenability to jurisdiction means that a defendant is within the substantive reach of a forum's jurisdiction under applicable law. Service of process is simply the physical means by which that jurisdiction is asserted."

*Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 855 (11th Cir. 2010) (citation omitted).

Here, Plaintiff states that,

> [v]enue is proper in this [D]istrict under 28 U.S.C. § 1391(b) and (c) and 1400(a) because the events giving rise to the claims occurred in this [D]istrict, Defendant engaged in infringement in this [D]istrict, Defendant resides in this [D]istrict, and Defendant is subject to personal jurisdiction in this [D]istrict.

[ECF No. 1, ¶ 8].

### i.       Service of Process

Service of process is a jurisdictional requirement. "Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003). "[W]ithout proper service of process, the district court ha[s] no power to enter a default judgment against the [defendant]." *Albert v. Discover Bank*, No. 21-12011, 2022 WL 1184405, at *1 (11th Cir. Apr. 21, 2022).

Here, Plaintiff filed a copy of the proof of service. [ECF No. 7]. It reflects that the process server served "Kristina Tretyakova as Sales Representative/Employee of the Limited Liability Company, pursuant to F.S. 48.062(2)(b)." *Id*. "In Florida, service of process on limited liability companies ('LLCs') is governed by section 48.062, Florida Statutes." *McGlynn v. Miami Diario LLC*, No. 22-CV-24261, 2023 WL 4251553, at *6 (S.D. Fla. June 29, 2023) (quoting *San-Way Farms, Inc. v. Sandifer Farms, LLC*, No. 8:20-CV-1969-CEH-CPT, 2021 WL 1840769, at *3 (M.D. Fla. May 7, 2021)). Under Fla. Stat. § 48.062(2) a "domestic limited

liability company or registered foreign limited liability company may be served with process required or authorized by law by service on its registered agent designated by the domestic limited liability company or registered foreign limited liability company under chapter 605." Only "[i]f service cannot be made on a registered agent of the limited liability company" may a plaintiff proceed to the next authorized service method: by service on the following: (a) "[o]n a member of a member-managed limited liability company"; (b) "[o]n a manager of a manager-managed limited liability company"; or (c) "[a]fter one attempt to serve a member, manager, or designated employee has been made, . . . on the person in charge of the limited liability company during regular business hours." *Id.*

Plaintiff properly served Defendant under Fla. Stat. § 48.062 because he served a member of Defendant's company who was authorized to accept service on behalf of its registered agent. The process server also stated that the "[p]erson served is [the] Registered Agent's daughter who also works for the company and is authorized to accept." [ECF No. 7].

The executed summons also complies with Federal Rule of Civil Procedure 4 because the filing reflects that a copy of the summons was included in the documents served that day. *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S. Ct. 404, 409, 98 L. Ed. 2d 415 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Fencl v.*

*PB&J Resorts II (Jamaica) Ltd.*, No. 6:22-CV-833-CEM-DCI, 2022 WL 19914480, at *2 (M.D. Fla. Aug. 29, 2022) ("Federal Rule of Civil Procedure 4(c) provides '[a] summons must be served with a copy of the complaint.' Since Ms. Seaton was not served with a summons, service of process on [the] [d]efendant was not properly effectuated through her.").

Therefore, Plaintiff properly served Defendant under both Florida and federal rules.

### ii.        Amenability to Jurisdiction

As a domestic LLC, Defendant is amenable to the jurisdiction of this Court. *See Shropshire v. Towing & Auto Repair Mgmt. Corp*, No. 8:20-CV-1931-TPB-CPT, 2021 WL 2904907, at *2 (M.D. Fla. Apr. 23, 2021), *report and recommendation adopted*, No. 8:20-CV-1931-TPB-CPT, 2021 WL 2895741 (M.D. Fla. July 9, 2021) (finding that the court had jurisdiction over the corporate defendant because it was a Florida corporation with its principal place of business in Florida); *Subic Bay Marine Exploratorium, Inc. v. JV China, Inc.*, 257 So. 3d 1139, 1141 (Fla. 5th DCA 2018) ("Florida residents are subject to the general jurisdiction of Florida courts. Under Florida law, corporations are residents of their state of incorporation." (internal citation omitted)).

### c.        Liability

As noted above, the Complaint alleges one count of copyright infringement under the Copyright Act. "To establish a prima facie case of copyright infringement, 'two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements

of the work that are original.'" *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232–33 (11th Cir. 2010) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

"[A] defaulted defendant is deemed to have admitted the movant's well-pleaded allegations of fact[.]" *Perez v. Wells Fargo N.A.*, 774 F.3d at 1339. Here, the Complaint alleges that:

> 10.    In 2015, Goldstein created the photograph entitled "Dahlia Spring 430," which is shown below and referred to herein as the "Work".



> 11.    Goldstein registered the Work with the Register of Copyrights on November 19, 2015, and was assigned registration number VAu 1-258-876.

> \*\*\*

> 13.    At all relevant times Goldstein was the owner of the copyrighted Work at issue in this case.

> 14.    Fortador has never been licensed to use the Work at issue in this action for any purpose.

16.     On or about June 12, 2023, Goldstein discovered the unauthorized use of his Work on the Website.

***

18.     After Fortador copied the Work, it made further copies and distributed the Work on the internet to promote the sale of goods and services as part of its professional steam cleaning business.

19.     Fortador copied and distributed Goldstein's copyrighted Work in connection with Fortador's business for purposes of advertising and promoting Fortador's business, and in the course and scope of advertising and selling products and services.

***

22.     Goldstein never gave Defendant permission or authority to copy, distribute or display the Work at issue in this case.

29.     Fortador's acts were willful.

***

30.     Goldstein has been damaged.

31.     The harm caused to Goldstein has been irreparable.

[ECF No. 1, ¶¶ 10–11; 13;14; 16; 18; 19; 22; 29–31].

Given the well-pleaded allegations of the Complaint, Plaintiff has established Defendant's liability for federal copyright infringement. *See Markos v. Yacht Charters of Miami.com, LLC*, No. 19-22284-CV, 2019 WL 8989936, at *2 (S.D. Fla. Oct. 2, 2019), *report and recommendation adopted*, No. 19-22284-CIV, 2019 WL 8989935 (S.D. Fla. Oct. 23, 2019) (finding

that "[the] [p]laintiff successfully pled [a claim of copyright infringement], alleging that he registered the photograph at issue with the Register of Copyrights on November 3, 2016, and that [the] [d]efendant subsequently used this photograph on [its] website without license or permission to do so.").

### d.    Damages

"Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v. Compass Med. Ctrs. Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022), *report and recommendation adopted*, No. 21-23623-CIV, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022). Even in the default judgment context, the Court "has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. Civ., § 2688 at 58–59 (3d ed. 1998)).

Here, Plaintiff seeks $41,955.50 in statutory damages, attorney's fees, and costs. [ECF No. 13, p. 14]. As discussed below, Plaintiff is entitled to the relief requested.

###    i.    Statutory Damages

Under the Copyright Act:

> a successful copyright litigant is entitled to any damage suffered and the infringers' profits or, at the election of the copyright owner, statutory damages. Statutory damages are awarded per copyrighted work infringed between Seven Hundred and Fifty Dollars ($750.00) and Thirty Thousand Dollars ($30,000.00), at the discretion of the Court. 17 U.S.C. § 504(c)(1). Further, if the Court finds that the infringement was willful, it is within the Court's discretion to raise the statutory award to One Hundred and Fifty Thousand Dollars ($150,000.00) per infringed work.

*Sanrio Co. v. Sommer's Ent. LLC*, No. 18-CV-22177, 2019 WL 2010249, at *4 (S.D. Fla. Mar. 21, 2019). (citing 17 U.S.C. § 504(c)(2)).

Here, Plaintiff seeks $37,500.00 in statutory damages. He notes that "[t]he typical range of fees [he] receives for creating and licensing the right to make use and display on the internet of one of his copyrighted photographs similar in quality and popularity to the Work is approximately $2,500.00 per photograph." [ECF No. 13, p. 9]. He contends that his "careful management of the distribution of the Work allows it to retain its value through its distribution." *Id*. "Furthermore, the Work has lost significant value to a reduction in its scarcity by the widespread and continuing dissemination resulting from Defendant's

infringement." *Id*. He calculated his "actual damages[2] to be $12,500.00, after considering a scarcity multiplier of five to the licensing fee of $2,500.00 per photograph." *Id*. (footnote added). Thus, Plaintiff calculates his statutory damages as about three times "the calculation of actual damages of $12,500.00 for the infringement of one image." *Id*.

"The Court has wide discretion to set an amount of statutory damages." *Affordable Aerial Photography, Inc. v. Elegance Transp., Inc.*, No. 6:21-CV-1166-CEM-LHP, 2022 WL 2306182, at *6 (M.D. Fla. Feb. 23, 2022), *report and recommendation adopted sub nom. Affordable Aerial Photography, Inc. v. Elegance Transp., Inc.*, No. 6:21-CV-1166-CEM-LHP, 2022 WL 2306516 (M.D. Fla. Mar. 14, 2022) (citing *Cable/Home Commc'n Corp. v. Network Prods. Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)). It may award statutory damages even in instances where a plaintiff cannot prove actual damages caused by a defendant's infringement. *See ABS-CBN Corp. v. abscbn-teleserye.com*, No. 17-61051-CIV, 2017 WL 6947726, at *8 (S.D. Fla. Dec. 27, 2017) (noting that "[a]n award of statutory damages is appropriate, because statutory damages may be elected whether or not there is adequate evidence of the actual damages suffered by [the] plaintiff or of the profits reaped by the [d]efendant").

The amount of statutory damages awarded should be sufficient to compensate the copyright holder *and* deter Defendant and others from infringing on that copyright. *See*

---

[2]     Plaintiff does not request *actual* damages because he does not have the necessary information on Defendant's gross revenue related to its use of his Work. [ECF No. 13, p. 10].

*Sadowski v. Orion Healthcare Servs., Inc.*, No. 21-CV-24475, 2022 WL 3155037, at *4 (S.D. Fla. July 21, 2022), *report and recommendation adopted*, No. 21-24475-CV, 2023 WL 2581349 (S.D. Fla. Mar. 21, 2023) ("The goal of statutory damages is not to merely compel restitution of profit and reparation for injury, but to also deter future violations of copyright infringement.").

> Here, Defendant's infringement was willful:
>
> A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" of a plaintiff's intellectual property rights. [*Arista Recs., Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003)]. Willful infringement may be inferred where, as here, a defendant is willing to accept a default judgment. *See Perry Ellis Int'l, Inc. v. URI Corp.*, No. 06-22020-CIV, 2007 WL 3047143, at *7 (S.D. Fla., Oct. 18, 2007).

*Sanrio Co.* 2019 WL 2010249, at *5; *see also Arista Recs., Inc.*, 298 F. Supp. 2d at 1312 (finding willful infringement due to the defendant's default and the allegations of willfulness set forth in the plaintiff's complaint).

Moreover, this requested statutory award is within the statutory range for a willful violation, and is sufficient to compensate Plaintiff, punish Defendant, and deter it and others from continuing to infringe Plaintiff's copyright. *See Aug. Image, LLC v. Auge Internacional Media, LLC*, No. 22-22718-CIV, 2022 WL 20834406, at *5 (S.D. Fla. Nov. 16, 2022) (entering default judgment award of $37,800.00 in statutory damages, noting this amount "[was] appropriate to compensate [the] [p]laintiff for the damages suffered, to create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct

14

in the hopes of earning more than they can be held accountable for in actual damages, and to deter future violations of copyright law"). Accordingly, the Undersigned respectfully **recommends** that the District Court award Plaintiff the requested **$37,500.00** in statutory damages.

ii.        **Attorney's Fees**

The Copyright Act permits the prevailing party to recover reasonable attorney's fees. 17 U.S.C. § 505. "Section 505 of the 1976 Copyright Act, 17 U.S.C. § 505, permits the trial court in its discretion to award a reasonable attorneys' fee to the prevailing party in a copyright infringement action." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 832 (11th Cir. 1982).

The Eleventh Circuit has stated that:

> The touchstone of attorney's fees under § 505 is whether imposition of attorney's fees will further the interests of the Copyright Act, *i.e.*, by encouraging the raising of objectively reasonable claims and defenses, which may serve not only to deter infringement but also to ensure "that the boundaries of copyright law [are] demarcated as clearly as possible" in order to maximize the public exposure to valuable works.

*MiTek Holdings, Inc. v. Arce Eng'g Co.*, 198 F.3d 840, 842–43 (11th Cir. 1999) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526–27, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)).

Here, Defendant acted willfully in its infringement of Plaintiff's copyrighted photograph. It failed to respond to the Complaint or otherwise participate in this action. "Courts routinely award attorney's fees and costs upon a finding of willful infringement

under the Copyright Act." *Sharp Shirter Inc. v. Individuals, P'ships, & Unincorporated Assocs. Identified on Schedule "A"*, No. 1:22-CV-23468-KMW, 2023 WL 6064810, at *5 (S.D. Fla. Aug. 30, 2023), *report and recommendation adopted sub nom. Sharp Shirter Inc. v. Individuals, P'ships, & Unincorporated Assocs. Identified on Schedule A*, No. 22-23468-CV, 2023 WL 6064519 (S.D. Fla. Sept. 18, 2023).

In the instant case, Plaintiff seeks $3,915.00 in attorney's fees. [ECF No. 13, p. 12]. Plaintiff filed a declaration from his attorney, Marian Quintero, in support of his fee request. [ECF No. 13-2]. Attorney Quintero's declaration attests that this amount consists of 9.6 hours of attorney time at a rate of $300.00 an hour. *Id.* at ¶ 8. The amount also includes two other timekeepers: (1) paralegal Christina Tcacisina, 3.3 hours (at a rate of $200.00 per hour); (2) client services liaison Julian R. Gordon, 2.5 hours (at a rate of $150.00 per hour). *Id.* at ¶¶ 10; 12.

Although Defendant failed to respond to the fees motion (or otherwise participate in this case), the Court must still ensure that the fees it awards are reasonable. *See Valley v. Ocean Sky Limo*, 82 F. Supp. 3d 1321, 1325 (S.D. Fla. 2015) ("[T]he Court has an independent obligation to review fee motions and bills of costs to independently determine whether the hourly rates sought are reasonable, the number of attorney hours sought are reasonable, and that the costs sought to be taxed are properly taxable pursuant to the cost statute."). The

Undersigned has reviewed Plaintiff's submissions and finds that Plaintiff's fee request should be granted in part.

The requested hourly rate for Plaintiff's attorney, Marian Quintero, is reasonable. *See, e.g., Wareka v. Faces by Francesca, LLC*, No. 20-CV-62466, 2021 WL 6101375, at *4 (S.D. Fla. Oct. 19, 2021), *report and recommendation adopted*, No. 20-62466-CIV, 2021 WL 6072810 (S.D. Fla. Dec. 23, 2021) (approving attorney hourly rate of $350.00); *Katz v. Chevaldina*, 127 F. Supp. 3d 1285, 1303-04 (S.D. Fla. 2015) (approving attorney hourly rates of $200.00–$400.00 in copyright infringement case).

However, the requested hourly rates for Plaintiff's counsel's paralegal and client services liaison are not reasonable based on other decisions within the Eleventh Circuit. *See Vallejo v. Narcos Prods. LLC*, No. 18-23462-CIV, 2020 WL 6815056, at *4 (S.D. Fla. Aug. 24, 2020), *report and recommendation adopted*, No. 18-23462-CIV, 2020 WL 5626635 (S.D. Fla. Sept. 21, 2020) (finding that a $100.00 paralegal hourly rate is "consistent with this market"); *Lincare, Inc. v. Markovic*, No. 8:22-CV-918-MSS-TGW, 2023 WL 7411510, at *5 (M.D. Fla. June 30, 2023), *report and recommendation adopted*, No. 8:22-CV-918-MSS-TGW, 2023 WL 7411545 (M.D. Fla. July 26, 2023) ("However, based on these paralegals' lengthy experience and qualifications, and the lack of opposing evidence, I recommend the (generous) hourly rate of $150."); *Fed. Trade Comm'n v. Vision Online, Inc.*, No. 6:23-CV-1041-WWB-DCI, 2023 WL 7129506, at *4 (M.D. Fla. Oct. 17, 2023), *report and recommendation adopted*, No. 6:23-CV-1041-

17

WWB-DCI, 2023 WL 9792568 (M.D. Fla. Nov. 20, 2023)(finding that a $150.00 paralegal hourly rate is reasonable). Because of the caselaw within this circuit and the difference in experience[3] between Ms. Tcacisina and Mr. Gordon, Ms. Tcacisina should be awarded $150.00 an hour and Mr. Gordon $100.00 an hour.

Plaintiff asserts that his attorney and her team expended 15.4 hours on this case. He attached a timesheet documenting his attorney and her team's activities to his motion. [ECF No. 13-3]. The Undersigned has reviewed the hours submitted and found multiple entries that the Court deems unreasonable (because I cannot discern how much time was spent on each activity nor what the activity is). Below are the entries related to this case:

---

[3]     Ms. Tcacisina has "over seven years of legal experience," and Mr. Gordon has "almost two years of legal experience[.]" [ECF No. 13-2, ¶¶ 11; 13].

18

| Date | Lwyr. | Services | Duration | Amount |
|------|-------|----------|----------|--------|
| 06/13/2023 | JGO | Draft Notice Letter & Insurance Letter **ERROR: Conditional IF block start found with no endif** & Insurance Letter, if required | 0.50 | $75.00 |
| 06/13/2023 | JGO | Review and Finalize letter(s), SEND via GetNotify, MOVE TO next step | 0.20 | $30.00 |
| 06/14/2023 | JGO | Email Update to Client | 0.10 | $15.00 |
| 06/14/2023 | JGO | IF RESPONSE Received, MOVE to Negotiations, IF NOT, MOVE to Draft Follow up | 0.20 | $30.00 |
| 06/20/2023 | JGO | Confirm Minimum Settlement and Enter into Matter Details | 0.10 | $15.00 |
| 12/04/2023 | JGO | Contact Client for Authorization to File Lawsuit | 0.10 | $15.00 |
| 12/04/2023 | MVQ | Attorney Review of Matter for Viability. | 1.00 | $300.00 |
| 12/04/2023 | JGO | Review matter details, defendant information, and email attorney. | 1.00 | $150.00 |
| 12/04/2023 | JGO | Move to Next Step or Close File. | 0.10 | $15.00 |
| 12/04/2023 | JGO | Prepare and send litigation engagement letter to client (if needed). | 0.20 | $30.00 |
| 01/10/2024 | CT | Review Matter Details, Client Documents, IP Details - Update matter info, if needed. | 0.50 | $100.00 |
| 01/10/2024 | CT | Re-investigate Defendant(s) & Update Details and Registered Agent | 1.00 | $200.00 |
| 01/10/2024 | CT | Prepare Exhibits for Complaint. | 0.30 | $60.00 |
| 01/10/2024 | CT | Draft Complaint. | 0.40 | $80.00 |
| 01/11/2024 | MVQ | Review and Revise Complaint | 0.50 | $150.00 |
| 02/28/2024 | MVQ | Drafted Motion for Clerk's Default with exhibits | 3.00 | $900.00 |
| 03/25/2024 | CT | Prepare Exhibits to Attorney Declaration. | 0.40 | $80.00 |
| 03/28/2024 | MVQ | Draft Final Default Motion, Attorney Declaration, Memorandum and Proposed Order. | 4.00 | $1,200.00 |
| 04/01/2024 | MVQ | One email sent/ reviewed | 0.10 | $30.00 |
| 04/02/2024 | MVQ | Revise Draft Final Default Motion (Motion, Declarations, Proposed Order) | 1.00 | $300.00 |
| 04/02/2024 | CT | Prepare Draft Invoice for Final Declaration Motion. | 0.10 | $20.00 |
| 04/02/2024 | CT | Finalize and File Motion for Final Default. | 0.60 | $120.00 |
| | | Our Fee | 15.40 | $3,915.00 |

*Id.*

First, "'[b]lock billing' occurs when an attorney lists all of the day's tasks on a case in a single entry and does not separate the tasks and the time spent working on those individual tasks as separate entries on billing records." *Plumbers & Pipefitters Union No. 421 Health & Welfare Fund v. Brian Trematore Plumbing & Heating, Inc.*, No. 5:11-CV-221, 2013 WL 3816660, at *4 (M.D. Ga. July 22, 2013). The practice of block billing is disfavored because it prevents the Court from accurately ascertaining the amount of time spent on each discrete task. *See Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-20079-CIV, 2008 WL 2688117, at *11 (S.D.

19

Fla. July 1, 2008) (noting that block billing "makes it difficult to establish whether the amount of time spent on any one task was reasonable"). Nonetheless, "[a]s a general proposition block billing is not prohibited so long as the Court can determine from the time entry the services that were performed." *Home Design Servs., Inc. v. Turner Heritage Homes, Inc.*, No. 4:08-CV-355-MCR-GRJ, 2018 WL 4381294, at *6 (N.D. Fla. May 29, 2018), *report and recommendation adopted*, No. 4:08CV355/MCR/GRJ, 2018 WL 6829047 (N.D. Fla. Sept. 28, 2018).

Here, the second June 13, 2023 entry is an example of block billing because Mr. Gordon listed multiple tasks within the same entry but failed to specify how much time was dedicated to each activity. The second June 14, 2023 entry, the fourth and fifth December 4, 2023 entries, and the first January 10, 2024 entry are all problematic because of their descriptions. As shown below, each of the entries includes a conditional statement that leaves the Undersigned asking whether the tasks were necessary or done in an abundance of caution.

| 06/14/2023 | JGO | IF RESPONSE Received, MOVE to Negotiations, IF NOT, MOVE to Draft Follow up | 0.20 | $30.00 |
|---|---|---|---|---|
| 12/04/2023 | JGO | Move to Next Step or Close File. | 0.10 | $15.00 |
| 12/04/2023 | JGO | Prepare and send litigation engagement letter to client (if needed). | 0.20 | $30.00 |
| 01/10/2024 | CT | Review Matter Details, Client Documents, IP Details - Update matter info, if needed. | 0.50 | $100.00 |

[ECF No. 13-3].

Additionally, they fail to describe what was actually completed in each entry. For example, with regards to the June 14th entry, was a response received? Or, with regards to the December 4th entries, was the file closed or was it moved to the next step? Was it necessary to prepare and send the litigation engagement letter to the client? Did any information need to be updated in reviewing the matter details or client documents? If Ms. Tcacisina had to update information, then that January 10th entry would fall under the "block billing" category of problematic entries. "Proof of the hours dedicated to the litigation and any corresponding objections must be made with sufficient specificity." *Home Design Servs., Inc. v. Turner Heritage Homes, Inc.*, No. 4:08-CV-355-MCR-GRJ, 2018 WL 4381294, at *2 (N.D. Fla. May 29, 2018), *report and recommendation adopted*, No. 4:08CV355/MCR/GRJ, 2018 WL 6829047 (N.D. Fla. Sept. 28, 2018) (citing *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988)).

These problematic entries will be reduced by 40%[4] because there is no way to determine on this record the amount of time counsel spent on each of the specific tasks mentioned in the block-billed entry or whether these tasks were necessary.

---

[4]     To calculate, the Undersigned first multiplied Ms. Tcacsina's .5 hours (based on the problematic entries) by 40% totaling .2 hours. Then, the Undersigned multiplied Mr. Gordon's .7 hours (based on the problematic entries) by 40% totaling .28 hours. The Undersigned subtracted the difference from Ms. Tcacisina and Mr. Gordon's total hours each totaling 3.1 and 2.22 respectively. Then, the Undersigned calculated the total based on the updated hourly rate. For Ms. Tcacisina $150.00 (originally $200.00) x 3.1 hours (originally 3.3 hours) = $465.00; for Mr. Gordon $100.00 (originally $150.00) x 2.22 hours (originally 2.5

However, the Undersigned finds the remaining time expended by Plaintiff's legal team to be reasonable. In sum, the Undersigned **respectfully recommends** that Plaintiff recover **$3,567.00** (instead of $3,915.00) in attorney's fees.

### iii.    Costs

Plaintiff seeks to recover $540.00[5] in costs, consisting of a process server fee totaling $135.00 and the $405.00 Clerk's filing fee. [ECF No. 13-2, ¶ 4].

The docket reflects that Plaintiff paid the filing fee. *See* Docket Text for [ECF No. 1 ("Filing fees $ 405.00 receipt number AFLSDC-17207240")]. Therefore, Plaintiff should recover this amount. *See RMK Merrill Stevens LLC v. Monaco*, No. 22-CV-23210, 2024 WL 384655, at *5 (S.D. Fla. Jan. 8, 2024), *report and recommendation adopted*, No. 22-23210-CV, 2024 WL 379948 (S.D. Fla. Feb. 1, 2024) ("Plaintiff is entitled to the $402.00 filing fee under § 1920 as taxable cost."); *Leading Edge Mktg., Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 23-CV-21333, 2023 WL 5206034, at *7 (S.D. Fla. Aug. 14, 2023) (awarding $402.00 in court costs as part of a default judgment award in willful infringement case).

---

hours) = $222.00). Therefore, the Undersigned subtracted $348.00 from the final attorney's fees award.

[5]    Plaintiff requests $540.50 in costs but neither the filing fee nor the process server fee include an amount ending in .50. Therefore, the Undersigned amended the request to $540.**00** (compared to $540.50).

However, Plaintiff's request as to the process server fees should be denied in part because he failed to provide an invoice detailing the process server's hourly rate. In the Eleventh Circuit, "service of process fees may be paid to private process servers so long as the amount does not exceed the amount charged by the U.S. Marshal for service of process." *Barrera v. Weiss & Woolrich S.*, 900 F. Supp. 2d 1328, 1332 (S.D. Fla. 2012) (citing *E.E.O.C.*, 213 F.3d at 624). The United States Marshals Service charges "$65 per hour (or portion thereof) for each item served by one U.S. Marshals Service employee, agent, or contractor, plus travel costs and any other out-of-pocket expenses." 28 C.F.R. § 0.114(a)(3).

Here, Plaintiff's motion fails to state the number of attempts made by the process server or information regarding travel costs, hourly rates, and out of pocket expenses. "Without this information, the Court must assume that service was made on the first attempt." *RMK Merrill Stevens LLC,* 2024 WL 384655, at *5. Thus, the Court should award Plaintiff only $65.00 for the process server fees, the rate charged by the U.S. Marshals service. *Id.* (citing *Venus Concept USA Inc. v. Smith High Inc.*, No. 1:21-CV-21558-KMM, 2022 WL 7609495, at *5 (S.D. Fla. Sept. 28, 2022), *report and recommendation adopted*, No. 1:21-CV-21558-KMM, 2022 WL 7514591 (S.D. Fla. Oct. 13, 2022) ("[The] [p]laintiff can recover no more than $65.00 per service[.]").

In sum, the Undersigned **respectfully recommends** that the Court award Plaintiff the reduced cost amount of **$470.00** (instead of $540.00).

### iv.   Pre-Judgement Interest

Plaintiff requests that the Court include pre-judgment interest in its award to him. [ECF No. 13, pp. 2; 14]. However, this request should be **denied** because he merely mentions it in passing.[6] He did not discuss why or how he is specifically entitled to pre-judgment interest, nor did he cite to any legal authority supporting his request. *See Taveras v. Fla. Dep't of Transportation*, No. 22-CV-23745, 2023 WL 9510534, at *9 (S.D. Fla. Dec. 4, 2023), *report and recommendation adopted*, No. 22-23745-CIV, 2024 WL 417112 (S.D. Fla. Feb. 5, 2024) ("The Undersigned will not consider Alpine's arguments . . . because Alpine failed to support these arguments with any legal authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it."); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

### v.   Permanent Injunction

Plaintiff seeks the issuance of a permanent injunction pursuant to 17 U.S.C. § 502. [ECF No. 13, p. 13].

---

[6]     The only times he references a pre-judgment interest award is within the introductory and conclusion paragraphs of his motion, and a single mention in his Complaint's prayer of relief. [ECF Nos. 1, p. 6; 13, pp. 2; 14].

The Copyright Act "permits the entry of an injunction to restrain" any violations of it. *Betty's Best, Inc. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule 'A'*, No. 1:23-CV-22322-KMW, 2023 WL 6171566, at *3 (S.D. Fla. Sept. 21, 2023) (citing 17 U.S.C. § 502, 35 U.S.C. § 283); *see also Pac. & S. Co., Inc. v. Duncan*, 744 F.2d 1490, 1499, n. 17 (11th Cir. 1984) (noting that the Copyright Act authorizes an injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright"). Injunctions are regularly issued pursuant to the mandate of § 502 because "the public interest is the interest in upholding copyright protections."

Moreover, injunctive relief is available even in the default judgment setting [ ] because [the] [d]efendants' failure to respond or otherwise appear makes it difficult for a plaintiff to prevent further infringement absent an injunction." *Animacord Ltd. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 21-CV-20744, 2022 WL 1109849, at *4 (S.D. Fla. Mar. 24, 2022), *report and recommendation adopted sub nom. Animaccord Ltd. v. Individuals, P'ships, or Unincorporated Ass'ns Identified on Schedule A*, No. 21-20744-CIV, 2022 WL 1102865 (S.D. Fla. Apr. 13, 2022) (internal citation omitted).

"A plaintiff seeking a permanent injunction . . . must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the

public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)). This four-part test "is regularly satisfied at the default-judgment stage in copyright-infringement cases." *Garden World Images Ltd. v. WilsonBrosGardens.com LLC.*, No. 1:19-CV-01035-AT, 2019 WL 8017802, at *7 (N.D. Ga. Oct. 31, 2019).

Plaintiff states that "Defendant's conduct has caused and any continued infringing conduct will continue to cause irreparable injury to Plaintiff." [ECF No. 13, p. 13]. He additionally contends that Defendant's disregard in using his work without compensating Plaintiff "greatly impairs the market value of the Work, since others competing in that business or in related business areas will not want to obtain a license" and improperly use his work like Defendant. *Id*.

Plaintiff's request for permanent injunctive relief should be granted. Plaintiff's motion demonstrates that Defendant's actions have and will continue to cause irreparable harm related to diminished market value and loss of licensing fees. *See Wareka v. Luxury Lab LLC*, No. 823CV00665CEHSPF, 2023 WL 9119240, at *5 (M.D. Fla. Nov. 29, 2023), *report and recommendation adopted*, No. 8:23-CV-665-CEH-SPF, 2024 WL 81815 (M.D. Fla. Jan. 8, 2024). Unless Defendant is enjoined and restrained, Plaintiff is likely to suffer further injuries that

cannot be fully compensated or measured in money (*e.g.*, third parties choosing to not pay for Plaintiff's copyrighted works if they see others using it for free).

The costs and hardship related to protecting Plaintiff's copyrighted work outweighs any potential damage to Defendant. A permanent injunction would prevent Defendant from publicly using Plaintiff's copyrighted works without permission. That is not a harm. But, even if it were, this purported "harm" would not outweigh the justification behind issuing this injunction. Finally, the imposition of a permanent injunction would not disserve the public interest because "the public interest is the interest in upholding copyright protections." *Arista Records, Inc.*, 298 F. Supp. 2d at 1314.

Therefore, the Undersigned **respectfully recommends** that Plaintiff's request for a permanent injunction be **granted**.

## IV.    Conclusion

For the reasons stated above, the Court should: (1) **grant in part and deny in part** Plaintiff's motion; (2) award Plaintiff **$37,500.00** in statutory damages, **$3,567.00** in attorney's fees, and **$470.00** in costs; and (3) issue a permanent injunction.

Plaintiff must provide a copy of this Report and Recommendations to Defendant, and file a notice of compliance on CM/ECF, by no later than **Friday, May 24, 2024**.

## V.      Objections

The parties will have four (4)[7] days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Kathleen M. Williams. Each party may file a response to the other party's objection within four (4) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on May 20, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Kathleen M. Williams
All Counsel of Record

---

[7]      The Undersigned is shortening the deadlines because Defendant has defaulted, and it therefore appears unlikely that it will respond in any way, including the filing of Objections.